*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0444**


State of Minnesota,
Respondent,

vs.

Tavaris Jermaine McDaniel,
Appellant.


**Filed February 6, 2017
Affirmed
Bjorkman, Judge**


Ramsey County District Court
File No. 62-CR-14-8383

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges his prohibited-possession-of-a-firearm conviction, arguing that the district court abused its discretion by admitting his aunt's out-of-court statements to responding police officers. We affirm.

**FACTS**

On May 12, 2014, St. Paul Police Department Officers Marshall Titus and Adam Bravo responded to a 911 call concerning a male and a female with a gun who were threatening people in an apartment building. The officers were sent to the wrong apartment unit, which they realized within three minutes. As they descended the stairs to leave the building, J.M. stopped them, waving her hands frantically. The officers described J.M. as "very frazzled," "upset," and talking quickly with a raised voice. After a bit of frantic swearing, J.M. told the officers to "go get that dude walking down with the checkerboard shirt on that's who got the gun." She identified him as her nephew, appellant Tavaris Jermaine McDaniel, pleaded with the officers not to shoot him, and said that he may have given the gun to the female. The officers followed J.M.'s direction, and found McDaniel about a block and a half from the apartment building. He was with a female who had a gun hidden inside her dress.

Respondent State of Minnesota charged McDaniel with being a prohibited person in possession of a firearm. At trial, J.M. testified contrary to her statements to the police. In response to the prosecutor's questioning, she stated, "you really making me mad because I am not for you; I am for the defense." The district court admitted J.M.'s

2

statements to the police that McDaniel had a gun as excited utterances.[1]  The jury found McDaniel guilty.  McDaniel appeals.

## D E C I S I O N

Generally, statements other than those made by a person testifying at trial are inadmissible unless an exception to the hearsay rule applies.  Minn. R. Evid. 802.  The excited-utterance exception permits the admission of hearsay that "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Minn. R. Evid. 803(2).  "The rationale for this exception stems from the belief that the excitement caused by the event eliminates the possibility of conscious fabrication, and insures the trustworthiness of the statement."  *State v. Bauer*, 598 N.W.2d 352, 366 (Minn. 1999) (quotation omitted).  While there are no strict temporal guidelines, the statement must be made "while the declarant is under the stress of excitement from the startling event."  *State v. Davis*, 820 N.W.2d 525, 536 (Minn. 2012) (quotation omitted).  We review a district court's evidentiary ruling for a clear abuse of discretion.  *Id*.

McDaniel argues that J.M.'s statements to the responding officers were not excited utterances and that they are not admissible under any other exception to the hearsay rule. We are not persuaded.

First, J.M.'s statements to the officers relate to a startling event—an argument that culminated in threats from armed individuals. McDaniel, his female companion, J.M.,

---

[1] One of the officers was wearing a body microphone that recorded J.M.'s statements. The district court permitted the state to introduce the recording and a transcript of the recording as evidence along with the officers' testimony.

3

and others got into a heated argument at the apartment building. The argument escalated when McDaniel took a gun from his companion, said he was going "to pop" them, and placed the gun in the waistband of his pants. This was a startling event. And J.M.'s statements to the responding officers, including telling them to pursue the man with the gun, indicating where they would find him, but asking them not to shoot him, directly relate to the startling event.

Second, J.M. was under the aura of this startling event when she made the statements. Her demeanor and appearance reflected ongoing excitement and fear. She intercepted the two officers as they were leaving the apartment building just minutes after the incident occurred. She was waving her hands, speaking quickly with a raised voice, and, according to Officer Titus, appeared to be "very frazzled" and "upset." J.M.'s request that the officers immediately "go get that dude walking down with the checkerboard shirt on that's who got the gun" reflect J.M.'s perception of the urgency of the situation. We do note, as McDaniel observes, that Officer Bravo testified that J.M. spoke calmly, as if she were upset with a child. But Officer Bravo also described J.M. as "upset" and stated that she spoke "quickly and kind of with like a raised voice."

We are not persuaded by McDaniel's argument that too much time elapsed between the incident and J.M.'s encounter with the officers for J.M. to still be under the influence of the startling event. The officers were dispatched immediately after the 911 call was received. They went to the wrong apartment unit, but quickly realized their error. J.M. encountered them as they left the unit. McDaniel's close proximity at the time of J.M.'s statements—one and one-half blocks from the apartment building—further

4

shows that J.M. was under the aura of the startling event when she spoke to the officers. Moreover, the lapse of time between a startling event and an out-of-court statement is not always determinative. *State v. Hogetvedt*, 623 N.W.2d 909, 913 (Minn. App. 2001), *review denied* (Minn. May 29, 2001). Rather, relevant factors also include "the nature of the event, the physical condition of the declarant, and any possible motive to falsify." *Id.* (quotation omitted). McDaniel's threatening statements while displaying a gun caused J.M. to be alarmed. And the fact that her statements to the officers implicated her own family member in criminal activity belie any motive to lie.

In sum, we are persuaded that this case presents a classic excited-utterance scenario. We discern no abuse of discretion by the district court in admitting J.M.'s statements to the officers as evidence. Because we conclude that these statements were not hearsay, we do not have to reach McDaniel's other arguments regarding their admissibility.

**Affirmed.**